J-A23028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: K.M.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M.S., BIRTH FATHER | No. 1858 WDA 2015 |

Appeal from the Decree October 23, 2015
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No: No. 7 of 2015

BEFORE: LAZARUS, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STABILE, J.:                **FILED NOVEMBER 08, 2016**

J.M.S. ("Father") appeals from the decree entered October 23, 2015, in the Court of Common Pleas of Westmoreland County, which involuntarily terminated his parental rights to his minor son, K.M.S. ("Child"), born in October of 2012.[1] After careful review, we affirm.

The orphans' court summarized the relevant factual and procedural history of this case as follows.

> This matter stems from an underlying dependency case at No. CP-65-DP-166-2013 . . . . On October 18, 2013, the

---

\* Retired Senior Judge assigned to the Superior Court.

[1] Child's mother, E.F., executed a consent to adoption form on October 21, 2014, and Child's presumptive father, M.F., executed a consent to adoption form on January 23, 2015. The orphans' court entered decrees confirming the consents of E.F. and M.F. and terminating their parental rights on October 23, 2015. E.F. and M.F. have not filed briefs in connection with this appeal, nor have they filed their own separate appeals.

Westmoreland County Children's Bureau (the "Agency") took emergency custody of the Child, following [the] revelation that the Child was left home alone by [Father] and the Child's birth mother, at a time when the Child was approximately one []year old. [Father's] leaving the residence was precipitated by a Protection from Abuse Order, obtained by the Child's natural mother, against [Father]. The Child has been in foster care from that point onward, and was adjudicated dependent on November 1, 2013. . . .

Orphans' Court Opinion, 6/24/16, at 1.

Father was incarcerated for burglary following Child's adjudication of dependency in November of 2013. N.T., 9/17/15, at 49. Father had several visits with Child during this period of incarceration. *Id.* at 40-41. Following his release in March of 2014, Father continued to participate in visits and received parenting instruction. *Id.* at 16-17. However, Father disappeared in the summer of 2014. *Id.* at 17, 26. Father did not resurface until he was incarcerated for robbery in October of 2014. *Id.* at 18, 27.

On February 4, 2015, the Agency filed a petition for involuntary termination of Father's parental rights to Child. The orphans' court held a termination hearing on September 17, 2015. Following the hearing, on October 23, 2015, the court entered its decree terminating Father's parental rights. Father timely filed a notice of appeal on November 20, 2015, along with a concise statement of errors complained of on appeal.[2]

---

[2] On May 18, 2016, a prior panel of this Court entered a judgment order remanding this case to the orphans' court. *See In re Adoption K.M.S.*, 2016 Pa. Super. Unpub. LEXIS 1736, 2016 WL 2908414 (Pa. Super. 2016) (unpublished judgment order). The panel explained that it was unable to review Father's claims because the orphans' court failed to prepare an
*(Footnote Continued Next Page)*

Father now raises the following issues for our review.

I. Whether, based upon the law and the facts of this case, the [orphans'] court erred in determining that [Father's] current incapability of performing parental duties cannot or will not be remedied by [Father] pursuant to 23 Pa.C.S.A. § 2511(a)(2)?

II. Whether, based upon the law and the facts of this case, the [orphans'] court erred in terminating [Father's] parental rights based solely on his incarceration?

III. Whether, based upon the law and the facts of this case, the [orphans'] court erred in determining that the conditions which led to the removal or placement of the children [*sic*] continue to exist under 23 Pa.C.S.A. § 2511(a)(5), and that [Father] cannot or will not remedy the conditions which led to the removal or placement within a reasonable period of time under 23 Pa.C.S.A. § 2511(a)(5)?

IV. Whether, based upon the law and the facts of this case, the [orphans'] court erred in determining that conditions which led to the removal or placement of the child continue to exist under 23 Pa.C.S.A. § 2511(a)(8)?

V. Whether, based upon the law and the facts of this case, the [orphans'] court erred in determining that termination of parental rights serves the needs and welfare of the child under 23 Pa.C.S.A. § 2511(b)?

Father's Brief at 9-10.

I. Whether, based upon the law and the facts of this case, the [orphans'] court erred in finding no bond existed between Father and his child?

*(Footnote Continued)* ————————————

opinion explaining its decision to terminate Father's parental rights. The panel directed the orphans' court to file an opinion within thirty days, and provided the parties with the opportunity to file supplemental briefs. The orphans' court complied with the judgment order by filing an opinion on June 24, 2016, and both Father and the Agency have filed supplemental briefs.

II. Whether, based upon the law and the facts of this case, the [orphans'] court improperly terminated [Father's] parental rights based on environmental factors which were beyond the control of the father?

III. Whether, based upon the law and the facts of this case, the [orphans'] court erred in determining that termination of parental rights serves the needs and welfare if the child?

Father's Supplemental Brief at 9.

We consider Father's claims mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in

- 4 -

the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Sections 2511(a)(2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be

beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted)). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, the orphans' court found that Father's repeated and continued parental incapacity has caused Child to be without essential parental care, control, or subsistence, and that Father cannot, or will not, remedy the conditions and causes of this incapacity. The court reasoned that Father is incarcerated, and will remain incarcerated for a significant period of time. Orphans' Court Opinion, 6/24/16, at 9. Even when Father is

released from incarceration, the court observed, he will have no stable housing, no job, and will be at a high risk for relapsing into drug addiction and/or violating his parole. *Id.* at 9-10. The court further emphasized that Father did little to achieve reunification with Child when not incarcerated. *Id.* at 9. Father visited with Child sporadically, failed to comply with services, and engaged in substance abuse and other criminal activities. *Id.*

Father argues that the orphans' court erred by terminating his parental rights, because he will be able to remedy the causes of his parental incapacity. Father's Brief at 17-19. Father contends that he visited with Child as much as possible during Child's dependency, and participated in parenting instruction. *Id.* at 18-19. Father suggests that his failure to obtain additional services was due to being placed on a wait list while incarcerated. *Id.* at 18, 20. Father asserts that he will be eligible for parole upon completion of a boot camp program, and that he will participate in drug and alcohol treatment. *Id.* at 19. In addition, Father argues that the orphans' court erred by terminating his parental rights based solely on his incarceration. *Id.* at 19-21.

After carefully examining the record in this matter, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Father's parental rights to Child. During the termination hearing, the Agency presented the testimony of caseworker, Bethany Lukart. With respect to Father's reunification objectives, Ms. Lukart testified that Father was asked

to participate in parenting instruction, to undergo a mental health evaluation and comply with any recommended treatment, to undergo a drug and alcohol evaluation and comply with any recommended treatment, and to obtain stable and appropriate housing. N.T., 9/17/15, at 23-24. Ms. Lukart reported that Father has failed to comply with these objectives almost completely. *Id.* at 25. "There was a brief period in May [of 2014] where he did participate in several parenting sessions and visitation, but that was all." *Id.* Father has not successfully completed parenting instruction, undergone a mental health or drug and alcohol evaluation, or obtained appropriate housing for Child. *Id.* at 24-25.

Concerning visitation with Child, Ms. Lukart testified that Father was not participating in visits at the time she was assigned to this case in September of 2014. *Id.* at 21, 26. Father's whereabouts were unknown, and he had not been heard from in "several months." *Id.* at 26. Ms. Lukart was not able to locate Father until he was incarcerated in October of 2014. *Id.* at 27. Father's visits with Child were reinstituted in November of 2014, but Father was not able to have a visit until January of 2015 because he was "in the hole" at Westmoreland County Prison. *Id.* at 29. Father then had hour-long visits twice per month at Westmoreland County Prison from January of 2015 until May 2, 2015. *Id.* at 30. Father's visits ended because he was transferred to a different facility. *Id.* Currently, Father is

incarcerated at SCI Houtzdale. *Id.* at 31. He is serving a sentence of three to ten years' incarceration, which he received on March 20, 2015. *Id.* at 22.

Accordingly, the record supports the finding of the orphans' court that Father is incapable of parenting Child, and that Father cannot, or will not, remedy his parental incapacity. Since Child entered foster care in October of 2013, Father has done next to nothing to complete the objectives necessary to be reunited with Child. Moreover, Father engaged in criminal activity during Child's dependency, which resulted in a lengthy period of incarceration. While Father claimed during the termination hearing that he would be attending a boot camp program starting on October 28, 2015, and that he would be released six months later, it was within the court's discretion to reject this testimony, and to conclude that the possibility of an early release should not prevent the termination of Father's parental rights. *See* N.T., 9/17/15, at 39. As observed by the orphans' court, there is no guarantee that Father will complete boot camp successfully. Orphans' Court Opinion, 6/24/16, at 9. Even assuming that Father does complete boot camp and is released early, he will be nowhere near ready to care for Child, and will be at a high risk for violating his parole or relapsing into illegal drug use.[3] *Id.* at 9-10.

---

[3] Although not discussed by Ms. Lukart, Father admitted that he is addicted to Suboxone and began using heroin during Child's dependency "because my
*(Footnote Continued Next Page)*

In addition, we reject Father's argument that the orphans' court impermissibly terminated his parental rights based solely on the fact of his incarceration. In its opinion, the orphans' court found that Father's incarceration was by itself a sufficient reason to terminate his parental rights. Orphans' Court Opinion, 6/24/16, at 9 (citing *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012)). However, the court hastened to add that its decision is supported by Father's conduct while not incarcerated, including Father's failure to comply with reunification services, sporadic visitation with Child, drug use, and commission of other serious criminal offenses. *Id.* It is clear that the orphans' court did not terminate Father's parental rights solely because he is incarcerated.

Further, it is now well-settled that "a parent's incarceration is relevant to the section (a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that the section contemplates." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (discussing *In re Adoption of S.P., supra*). Even if the orphans' court had relied solely on Father's incarceration in order to terminate his parental rights under Section 2511(a)(2), it would not have been an abuse of discretion given the facts of this case.

*(Footnote Continued)* —————————————

baby's mother was using it, and it made me feel like I had to use it to communicate with her again . . . ." N.T., 9/17/15, at 51, 58.

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

In the instant matter, the orphans' court found that terminating Father's parental rights would best serve the needs and welfare of Child. The court emphasized that Father presently is unable to care for Child, and likely will not be able to care for Child even upon his release from incarceration. Orphans' Court Opinion, 6/24/16, at 9-10. The court further

- 11 -

reasoned that Child no longer recognizes Father, and that Child and Father do not share a parent/child bond. *Id.* at 10.

Father argues that Child is bonded with him. Father's Brief at 26; Father's Supplemental Brief at 16-17, 20. Father asserts that Child was excited to attend his visits with Father, and referred to him as "Dad" or "Daddy." Father's Brief at 26; Father's Supplemental Brief at 17, 20. Father further contends that the orphans' court violated Section 2511(b) by terminating his parental rights based on environmental factors beyond his control. Father's Supplemental Brief at 17-19. Here, Father again argues that the court terminated his parental rights based solely on the fact of his incarceration. *Id.* at 19. Father emphasizes that he visited with Child and endeavored to participate in services while incarcerated. *Id.*

With respect to Child's needs and welfare, the Agency presented the testimony of Child's foster mother, M.F. ("Foster Mother"). Foster Mother testified that Child was placed with her and her husband shortly after his first birthday. N.T., 9/17/15, at 6-7. Concerning the quality of Father's visits with Child, Foster Mother reported that there are no problems. *Id.* at 8. Foster Mother stated, "[h]e relates to him all right and [Child] does all right, but there's no real close connection." *Id.* Foster Mother explained that Child receives speech therapy four times per week, and that Child "treats his father like another therapist. . . . He'll bring over a book and try to say words for him. He'll try to name things in the room, do basically the same things he has during therapy." *Id.* at 10. Foster Mother further

testified that Child is not resistant to leaving Father at the conclusion of visits. *Id.* at 11. "[T]here is no real reaction. He'll give him a hug and he'll leave . . . and he wants to push the button on the elevator. That's his main thing." *Id.* Child refers to Foster Mother as "mommy" or "momma," and refers to Foster Mother's husband as "dad-da." *Id.* at 8. In contrast, Child has no name for Father. *Id.*

Thus, the record supports the finding of the orphans' court that terminating Father's parental rights would best serve the needs and welfare of Child. Child appears to have no parental bond with Father, and instead views his foster parents as his parents. While Father claimed during the termination hearing that Child referred to him as "Dad" or "Daddy" and was excited to attend visits, the orphans' court was free to reject this testimony as incredible. *See* N.T., 9/17/15, at 41. In addition, we reject Father's argument that the orphans' court violated Section 2511(b) by terminating his parental rights based on environmental factors that were beyond his control. As discussed above, the court did not terminate Father's parental rights based solely on his incarceration. Further, Father's incarceration for robbery clearly was not beyond his control.

Accordingly, because we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Father's parental rights to Child, we affirm the decree of the orphans' court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/8/2016